## BLUE VALLEY LUMBER COMPANY ET AL. V. JULIUS NEUMAN.

### FILED FEBRUARY 23, 1899. No. 8678.

1. **Verdict: EVIDENCE: COUNTER-CLAIM: HARMLESS ERROR.** When the verdict of a jury would have been sustained by the evidence if it had been for the entire amount claimed by plaintiff, the allowance of a counter-claim inexplicable upon any theory of the evidence, if an error, is not such an error that the defendant may be heard to complain of it.

2. **Sales: MISREPRESENTATIONS: INSTRUCTIONS.** Where the petition contained averments of erroneous representations affecting the value of personal property honestly made, and other averments of like misrepresentations dishonestly made, an instruction to meet the latter theory is not erroneous when given in connection with and to supplement one based on the former theory.

3. ————: ————: **EVIDENCE: REVIEW.** When the misrepresentations relied upon as the basis of a counter-claim were alleged to have been made to one person, proof of facts showing the misrepresentations to have been made to another person is irrelevant; and the fact that such proof was ignored by the jury in its verdict is not available in proceedings in error to reverse the judgment based on such verdict.

ERROR from the district court of Gage county. Tried below before BABCOCK, J. *Affirmed.*

*L. M. Pemberton,* for plaintiffs in error.

*A. D. McCandless, contra.*

RYAN, C.

This action was brought in the district court of Gage county by Julius Neuman on a promissory note made by the Blue Valley Lumber Company to plaintiff and indorsed by F. C. Jaynes and A. E. Winter, for a balance unpaid thereon of $377.13, with interest from its date, February 4, 1890. The defendants, by their answer, admitted the execution of the note as alleged in the petition, and that there had been paid on it the sum of

$793.56 on February 3, 1891, as plaintiff had averred. For further answer the defendants alleged that the note sued on had been given pursuant to, and in fulfillment of, the conditions of a certain written contract, which was in the following language:

"These articles of agreement, made and entered into this 4th day of February, A. D. 1890, by and between Julius Neuman, of Wymore, party of the first part, and Fremont N. Jaynes, agent, of Omaha, Nebraska, party of the second part, witnesseth: Said first party agrees to sell, assign, and convey to second party, or his assigns, fifty shares of the capital stock of the Blue Valley Lumber Company, of Wymore, Nebraska (incorporated), and all of his interest in the profits accrued, and all accounts and bills receivable due or to become due said company, and to resign his position as manager of said company and to wholly sever his connection with said company. In consideration for which said second party hereby agrees to pay first party the sum of $4,150 in manner following, to-wit: $900 cash in hand at the time of signing this instrument and the transfer of said stock, which shall take place the 4th day of February, 1890; $1,000 in one year from date hereof and $1,000 in two years from date hereof; both sums to be put into promissory notes to be signed by the Blue Valley Lumber Company, Fremont N. Jaynes, and A. E. Winter; the balance of said consideration, to-wit, $1,250, to be paid by conveyance by quitclaim deed of an undivided one-half interest in a certain farm in Pawnee county, Nebraska, 160 acres, now jointly owned by said Julius Neuman and A. E. Winter; said deed to be signed by A. E. Winter and his wife, Kittie Winter, and executed in due and legal form. Said Blue Valley Lumber Company assumes all the existing liabilities of said corporation, and said first party is released therefrom and shall be held harmless from said liabilities by said second party and said corporation.

10

"In testimony of which we have hereunto set our hands this 4th day of February, A. D. 1890.

> "JULIUS NEUMAN.
> "F. A. JAYNES.

"Witness:

"H. C. JAYNES. '

"Wymore, Neb., February 4, 1890."

The defendants in their answer further alleged that said Blue Valley Lumber Company was a corporation and had a lumber yard and office at Wymore; that from its organization till the time of making said contract plaintiff had been its president and general manager and had had full charge of the management of all the affairs of said company, had kept its books and had full knowledge of its assets and liabilities, and was the only person who had such knowledge; that at the time of making said contract, and as an inducement to the defendant F. N. Jaynes to enter into said contract, plaintiff stated and represented to said defendant that the assets of the company, including its bills receivable, exceeded its liabilities, inclusive of its capital stock, by the sum of $1,501.37; that the accounts and bills receivable of said company, at the time of making said contract, amounted to the sum of $8,820.62, all of which accounts plaintiff then stated to said defendant were due and unpaid to the company, and that the liabilities of said company at said time amounted to $3,340.70, and no more, exclusive of the capital stock of said corporation, which was $10,000; that the books of said company were correct and represented the true condition of the accounts of said company, and that the net profits of said corporation for the time it had been in existence, and which were then on hand, amounted to said sum of $1,501.37, one-half of which said defendant was to get under said contract. It was further alleged in the answer that the defendant F. N. Jaynes, in reliance upon the representations of the plaintiff, entered into the contract hereinbefore set out by a copy thereof, and caused to be exe-

cuted the notes and quitclaim deed in said contract provided for, and performed all the undertakings on his part assumed. It was further alleged in the answer that plaintiff assigned and transferred to said defendant, or to the persons whom he represented in said transaction, A. E. Winter, H. C. Jaynes, and O. F. Jaynes, fifty shares of the capital stock of said Blue Valley Lumber Company, together with the assets of said company which were then actually in the possession of plaintiff, except as in the answer stated; that after the transfer of said fifty shares of stock and the assets, including the bills receivable of said company, to defendant F. N. Jaynes and those for whom he was acting, defendants discovered that said statements and representations made to F. N. Jaynes by plaintiff with reference to the assets and liabilities of said company were untrue, and that plaintiff, with the fraudulent intent to cheat and defraud said defendant and those for whom he was acting, had misrepresented the true condition of said company; that a part of the accounts and bills receivable transferred and turned over to defendant by plaintiff pursuant to said contract as being still due and payable to said company had, in fact, been paid to plaintiff long prior to the time of making the contract, as plaintiff well knew, and that said defendant and those for whom he was acting thereby lost one-half of all such accounts and bills receivable to which they were entitled by virtue of said contract with plaintiff. There were further errors alleged in the books in general terms, followed by the special averment that the profits of said company did not amount to $1,501, the amount of them as represented by plaintiff, but that such profits only amounted to $901.85. The answer concluded with this language: "That by reason of the said false and fraudulent representations of plaintiff and the mistakes and errors contained in the books of said company as kept by plaintiff and turned over to the defendant F. C. Jaynes, said defendant and those for whom he was acting were cheated and defrauded in

the sum of $318.92, and failed, for said reason, to get under the said contract as much as they would have got had the statements and representations been true, by the sum of $318.92, and that to said extent the consideration of the note herein sued upon has failed, and the makers of said note are entitled to a credit thereon of the full amount which would otherwise be due thereon, and defendants ask that they may have such credit in this action, and that they be allowed to go hence with their costs." The above averments of affirmative matter were denied in the reply. There was a verdict in favor of the plaintiff Neuman, and the judgment defendants, by a joint petition in error, ask the reversal of the judgment thereon. This circumstance requires that we shall not consider separately the errors which might otherwise have been presented by an individual plaintiff in error.

The evidence disclosed that on the contract, of which a copy is above given, there was indorsed the following assignment:

"WYMORE, NEB., February 4, 1890.

"I hereby assign the within contract to A. E. Winter, H. C. Jaynes, and O. F. Jaynes, as their interests may appear.          F. N. JAYNES, *Agent.*"

There are some features in this case that are rather unusual. In the first place, the designation of agent, as it follows the name of F. N. Jaynes in and as attached to the contract, is in no way explained. In the evidence there was no attempt to show that Neuman knew anything about the principal or principals of F. N. Jaynes, except that in his own testimony Mr. Neuman said that a certain exhibit was in his own handwriting, and that on the day of making the contract F. N. Jaynes stated to him that he wanted something to show to Mr. Winter the condition of the lumber yard to satisfy him he was getting something for the money he was to pay, and there was nothing but the paper referred to in the pigeon-hole, and that Neuman and said Jaynes figured that out, as Neuman had previously figured it out before there had

been any talk of buying or selling. Again, there is no explanation of the rather singular circumstance that while the subject-matter of the sale was composed of shares of capital stock of the company and its assets, which were to be transferred to F. N. Jaynes, the company, which was in no way interested in the transaction, as far as we are advised, was required to, and in fact as principal obligor did, execute the purchase-price notes to Neuman. There was introduced in evidence a telegram signed Mrs. F. N. Jaynes, which recited that her husband was too sick to attend court in Gage county, but there was no application for a continuance, and we have no knowledge of the facts as they were understood by this person. It seems that he has ceased to be a stockholder in this corporation, though how or when this happened we have no means of knowing. It is, however, clear from the testimony of Neuman, offered by the defendants, that previous to February 4, 1890, F. N. Jaynes owned forty-nine shares of the stock of the Blue Valley Lumber Company; that for some time previously he had been its secretary; that usually he came from his home in Omaha to Wymore every fortnight; that he made one of these visits on February 3, 1890, and then made a protracted examination of the books of the company, and that he finished this task about 2 o'clock of the morning of February 4, 1890. At this hour he said to plaintiff that he was not satisfied with the way the business was going on and wanted to sell his interest, but plaintiff answered that it was too late in the night to make such a proposition, and besides this, plaintiff said he did not think he could buy. In the morning, at about 8 o'clock, plaintiff again said he could not buy, but asked Jaynes how much he would take for his stock, and Jaynes answered that he would take $4,500; that the books showed that there was that at that time. On being told by Neuman that he could not buy, Jaynes asked for an option of thirty minutes in which he could arrange to buy Neuman's stock at the price above indicated. This was given

him, but after an absence of three-quarters of an hour Jaynes came back and offered $4,150, which, after some hesitation, Neuman accepted. According to the testimony of Neuman, Jaynes acted on his own judgment, made up from what information he had gathered from an examination of the books of the company. This was sufficient to justify a finding that no defense whatever had been established, and plaintiffs in error have no just cause of complaint in the fact that the jury found upon the counter-claim in their favor in a measure that it is difficult to find figures in the evidence to sustain.

It is urged that the court instructed that it was necessary that the erroneous information on which the defendants acted must have been imparted with knowledge that it was misleading. It must be remembered that the petition justified the assumption that plaintiff was seeking to recover on two theories: one of which was that the information acted upon was erroneous, but was given in good faith; the other was that the misinformation had been purposely imparted. The instruction complained of was applicable to the first of these theories, but it was followed by other instructions, under which the defendants were entitled to avail themselves of the fact of being misled, even though the error in this respect was not willful.

There is complaint that an instruction was refused, but there was no error in this, for the court on its own motion gave, in substance, the instruction asked, and its nature is indicated by the second theory above described.

It is urged that one of the statements of the condition of the lumber company's accounts was made out in the handwriting of the defendant in error; that in it there were erroneous items; that this statement was shown to Winter, as Neuman knew it would be, and that thereby Winter was deceived and induced to become a purchaser of the capital stock. We have already indicated that the petition in error was joint, and from this fact it would result that Winter, individually, cannot be heard

to complain, even if there existed no other objection. But the original petition does not describe any misrepresentation, except such as was made directly to F. N. Jaynes, with whom alone it was alleged the negotiations were conducted. The theory that F. N. Jaynes in purchasing relied upon his own investigations and knowledge of the affairs of the corporation is strongly countenanced by the provision in the written contract, that "Said Blue Valley Lumber Company assumes all the existing liabilities of said corporation, and said first party [Neuman] is released therefrom and shall be held harmless from said liabilities by said second party [Jaynes] and said corporation." We have found no error in the record, and the judgment of the district court is

.　AFFIRMED.